**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **GRACE RACE PALLIATIVE HOSPICE, L.L.C.,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services; CENTERS FOR MEDICARE & MEDICAID SERVICES; MEHMET OZ, M.D., in his official capacity as Administrator of the Centers for Medicare & Medicaid Services; and DOES 1-10, in their official capacities,**<br><br>*Defendants.* | ) | **Civil Action No. 4:26-cv-07023** |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER APPROPRIATE RELIEF; APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW, Grace Race Palliative Hospice, L.L.C., and files this its Complaint for Declaratory, Injunctive, and Other Appropriate Relief; Application for Temporary Restraining Order and Preliminary Injunction, and alleges and avers as follows:

## I. NATURE OF THE ACTION

1. This is a civil action seeking declaratory, temporary, preliminary, permanent, and other equitable relief arising from Defendants' continuing suspension of Medicare payments otherwise payable to Plaintiff Grace Race Palliative Hospice, L.L.C. ("Grace").

2. Grace does not challenge the Government's authority to investigate credible allegations of fraud, review Medicare claims, protect the Medicare Trust Fund, or pursue lawful overpayments and sanctions. Grace challenges the manner in which Defendants have imposed and

continued a full payment suspension while withholding the factual and methodological information necessary to permit a meaningful response.

3. CMS imposed the full suspension after concluding that a "credible allegation of fraud" existed, relying principally on statistical analysis concerning Grace's live-discharge rate. The Notice did not identify a particular beneficiary allegedly ineligible for hospice, a false physician certification, a specific fraudulent claim, or individualized medical-record evidence establishing fraud.

4. Grace timely invoked the rebuttal procedure and challenged the statistical premise, the adequacy of notice, the legal basis for the suspension, and the failure to use a less restrictive alternative. Defendants nevertheless continued the full suspension without supplying the undisclosed methodology, providing a meaningful opportunity to test the asserted factual predicate, or issuing a reasoned disposition that meaningfully engaged Grace's material objections.

5. The resulting deprivation is immediate and continuing. Medicare reimbursement is Grace's principal operating revenue. Continued withholding threatens payroll, regulatory compliance, continuity of operations, and Grace's ability to furnish uninterrupted hospice care to Medicare beneficiaries.

6. This action is therefore directed to process and lawful authority, not to the ultimate adjudication of individual Medicare claims. Grace asks the Court to determine whether Defendants may continue a complete payment deprivation under the procedures actually afforded here and whether the governing law authorizes the action actually taken.

7. Under 5 U.S.C. § 706 and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392-96, 412-13 (2024), the Court must exercise independent judgment in resolving questions of statutory authority. And under *Mathews v. Eldridge*, 424 U.S. 319, 333, 335 (1976), *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), and *Memphis Light, Gas & Water Division v. Craft*, 436 U.S.

1, 16-19 (1978), due process requires meaningful notice and a meaningful opportunity to be heard appropriate to the nature and consequences of the deprivation.

## II. JURISDICTION & VENUE

8. This action arises under the Constitution and laws of the United States, including the Due Process Clause of the Fifth Amendment, the Medicare Act, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

9. Grace seeks declaratory, prospective injunctive, and other equitable relief to remedy ongoing constitutional and statutory violations. Grace does not seek money damages, adjudication of the medical necessity of any individual hospice service, judicial allowance of any particular Medicare claim, or a final determination concerning the merits of any fraud investigation.

10. Sovereign immunity is waived under 5 U.S.C. § 702 because Grace seeks relief other than money damages against federal agencies and officers acting in their official capacities.

11. Grace recognizes that claims arising under the Medicare Act ordinarily are subject to the presentment and channeling requirements of 42 U.S.C. §§ 405(g) and 405(h), as incorporated by 42 U.S.C. § 1395ii. *See Heckler v. Ringer*, 466 U.S. 602, 614-17 (1984); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12-14 (2000).

12. Grace also recognizes that labeling a Medicare dispute constitutional, statutory, or procedural does not, standing alone, avoid those requirements. Ringer, 466 U.S. at 614-15.

13. The nonwaivable presentment requirement is satisfied because Grace timely presented its factual, constitutional, statutory, and regulatory objections through the rebuttal process governing the challenged suspension, and CMS considered those objections but continued the suspension.

14. The claims asserted here are collateral to the merits of any reimbursement, overpayment, hospice-eligibility, or fraud determination. Grace does not ask the Court to decide

whether a particular beneficiary was hospice eligible or whether a particular claim ultimately must be paid. It challenges the legality of the process by which Defendants continue withholding Grace's principal stream of Medicare reimbursement.

15. Postponing judicial review until completion of a later Medicare administrative process would effectively deny meaningful review of the claims asserted here because the challenged deprivation itself threatens to disable Grace's operations before such review can occur.

16. The available administrative process cannot timely adjudicate the constitutional adequacy of the present suspension procedure or provide the prospective equitable relief requested here before the threatened injury occurs.

17. These allegations fall within the framework recognized by *Mathews*, 424 U.S. 319, and applied in the Medicare context by *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 501-05 (5th Cir. 2018). *Family Rehabilitation* held that a Medicare provider's procedural-due-process and ultra vires claims may be collateral where the provider seeks temporary relief pending constitutionally adequate process rather than an immediate adjudication of reimbursement entitlement.

18. *Family Rehabilitation* further recognized that forcing a provider to endure a challenged withholding process until the provider closes or patient care is disrupted can amount to the practical denial of meaningful judicial review. *Id*. at 504-05.

19. Grace additionally alleges that Defendants have acted beyond the authority delegated by Congress and contrary to mandatory federal law. Federal courts possess equitable authority to review claims that federal officers act unconstitutionally or beyond statutory authority. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-91 (1949); *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958).

20. Section 706 of the APA independently requires the reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of agency action. 5 U.S.C. § 706.

21. *Loper Bright* confirms that the Court must exercise its own judgment in determining the boundaries of authority Congress conferred. An agency's interpretation may be considered according to its persuasive force, but statutory ambiguity does not itself transfer the judicial function to the agency. 603 U.S. at 392-96, 412-13.

22. Accordingly, this Court has jurisdiction to adjudicate Grace's collateral constitutional and statutory claims and to grant prospective declaratory and equitable relief consistent with the jurisdictional principles governing Medicare cases.

23. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(e) because Grace resides in this District, a substantial part of the events and injury giving rise to this action occurred in this District, and Defendants are federal agencies and officers sued in their official capacities.

## III. THE PARTIES

24. Plaintiff Grace Race Palliative Hospice, L.L.C., is a Medicare-certified hospice provider authorized to furnish hospice services to eligible Medicare beneficiaries and to receive reimbursement for covered services lawfully furnished under the Medicare program.

25. Defendant Robert F. Kennedy, Jr., is the Secretary of the United States Department of Health and Human Services and is sued solely in his official capacity.

26. Defendant Centers for Medicare & Medicaid Services ("CMS") is an agency within the United States Department of Health and Human Services responsible for administering the Medicare program and for the payment-suspension framework challenged in this action.

27. Defendant Mehmet Oz, M.D. is the Administrator of CMS and is sued solely in his official capacity.

28. Grace presently is unaware of the identities of any additional federal officials directly responsible for the continuing actions challenged here and therefore names Does 1 through 10 in their official capacities. Grace will amend if their identities become known and amendment is appropriate.

## IV. STATUTORY AND REGULATORY FRAMEWORK

29. Congress established Medicare to reimburse covered healthcare services furnished to eligible beneficiaries, including covered hospice services. Title XVIII of the Social Security Act, commonly known as the Medicare Act, 42 U.S.C. § 1395 et seq.

30. The Secretary administers Medicare through CMS under the Medicare Act and implementing regulations.

31. The payment-suspension regulations appear at 42 C.F.R. §§ 405.370-.372. They authorize CMS, in specified circumstances, to suspend Medicare payments pending investigation or other action.

32. Where CMS invokes a credible allegation of fraud, the regulatory framework requires that the allegation have sufficient indicia of reliability and provides procedural protections concerning notice, rebuttal, duration, and continuation of the suspension.

33. The availability of a written rebuttal does not itself resolve the constitutional question. A procedure must be meaningful as applied: the affected party must receive information sufficient to understand the asserted basis for the deprivation and a fair opportunity to respond to that basis.

34. The Due Process Clause is not displaced by the Medicare regulations. Agency procedures remain subject to the Fifth Amendment even when the agency acts under a valid statutory program.

35. The APA likewise requires reasoned decision-making. A reviewing court must set aside agency action that is arbitrary, capricious, contrary to constitutional right, in excess of statutory jurisdiction or authority, or taken without observance of procedure required by law. 5 U.S.C. § 706(2)(A)-(D).

36. Under *Loper Bright*, the scope of the authority Congress conferred is a question for the Court's independent judgment. CMS may exercise discretion that Congress lawfully delegated, but neither CMS nor its regulations may enlarge the authority Congress actually granted.

37. This case therefore presents two related but distinct questions: whether Defendants afforded constitutionally adequate process before continuing the full deprivation, and whether the challenged continuation falls within the authority Congress actually conferred as determined by the Court under § 706.

## V. FACTUAL BACKGROUND

### A. Grace's Participation in Medicare

38. Grace is and has been a Medicare-certified hospice provider furnishing hospice care to terminally ill Medicare beneficiaries.

39. Grace has participated in Medicare subject to the statutory and regulatory conditions applicable to hospice providers.

40. Grace has furnished hospice services in reliance on the statutory framework providing reimbursement for covered services lawfully rendered.

41. Medicare reimbursement constitutes Grace's principal source of operating revenue and is essential to payroll, patient care, regulatory compliance, and ongoing operations.

42. Grace claims entitlement to reimbursement for covered hospice services lawfully furnished and billed in accordance with applicable Medicare requirements.

**B. CMS Imposes a Full Payment Suspension**

43. On or about May 19, 2026, Qlarant Integrity Solutions, acting as the Unified Program Integrity Contractor on behalf of CMS, issued a Notice of Suspension advising Grace that Medicare payments had been suspended effective April 9, 2026.

44. The Notice stated that CMS had imposed a full payment suspension based on an asserted "credible allegation of fraud" under 42 C.F.R. §§ 405.370-.372.

45. The Notice principally relied on data analysis reflecting an elevated live-discharge rate during an identified review period and asserted that the statistical information suggested beneficiaries may have been enrolled without satisfying Medicare hospice-eligibility requirements.

46. The Notice did not identify a beneficiary allegedly ineligible for hospice, a physician certification alleged to be false, a specific claim alleged to be fraudulent, or individualized medical-record evidence establishing fraud.

47. The Notice did not disclose the methodology underlying the statistical analysis, including the comparator population, discharge classifications, exclusions, claim-selection criteria, patient mix, or other information Grace alleges was necessary to evaluate and meaningfully answer the asserted statistical inference.

48. The suspension nevertheless operated against Grace's Medicare payments as a whole rather than only against identified claims or beneficiaries.

### C. Grace Timely Exercises the Rebuttal Right

49. CMS advised Grace that it could submit a written rebuttal challenging the payment suspension.

50. On May 28, 2026, Grace timely submitted a comprehensive rebuttal through counsel disputing the factual and legal bases for the suspension.

51. The rebuttal challenged the adequacy of notice, the use of statistical information as the asserted fraud predicate, the absence of disclosed methodology and individualized support, the legal basis for continuation of a full suspension, and the constitutionality of the process being provided.

52. Grace also requested that CMS terminate the suspension or, alternatively, reduce it to a partial or targeted suspension pending completion of the investigation.

53. Grace's position was that a paper opportunity to object is not meaningful where the provider is denied the information needed to understand and test the premise on which the complete deprivation rests.

### D. CMS Continues the Full Suspension

54. On July 13, 2026, following the rebuttal, CMS determined that the payment suspension would remain in effect.

55. CMS thereby continued withholding Medicare reimbursement otherwise payable to Grace for covered hospice services.

56. Grace alleges that Defendants did not meaningfully address the material factual, constitutional, statutory, and regulatory objections raised in the rebuttal.

57. Grace further alleges that Defendants did not disclose the statistical methodology or individualized factual basis necessary to permit meaningful testing of the asserted fraud predicate.

58. Grace alleges that Defendants did not adequately explain why a full suspension remained necessary, why a less restrictive alternative would be insufficient, or how the asserted allegation continued to satisfy the applicable reliability requirement after consideration of Grace's rebuttal.

**E. Defendants' Undisclosed Basis and Decision-making**

59. The suspension notice provided to Plaintiff does not identify the CMS official who determined that a credible allegation of fraud existed against Plaintiff, the particular facts upon which that determination was based, or the substance of the consultation with the HHS Office of Inspector General required in determining whether a credible allegation of fraud exists.

60. The notice instead relies principally upon contractor-generated statistical, clinical, documentation, or payment-review conclusions. It does not identify a particular false representation, fraudulent act, or fraudulent scheme attributable to Plaintiff or explain how the cited payment or clinical concerns establish a credible allegation of fraud possessing the requisite indicia of reliability.

61. On information and belief, CMS did not itself make the determination required for imposition of the challenged fraud suspension based upon an independently identified credible allegation of fraud. Rather, CMS adopted, accepted, or implemented conclusions generated through the contractor's review. The identity of the CMS decisionmaker, the evidence actually considered by CMS, the substance of any consultation with OIG, and the internal findings and communications concerning the decision are matters uniquely within Defendants' possession and control.

62. Plaintiff timely submitted a substantive rebuttal addressing the asserted grounds for suspension and providing evidence directly bearing upon whether the suspension was justified. Plaintiff specifically addressed the statistical, clinical, documentation, and payment

issues relied upon in the suspension notice and explained why those matters did not establish fraud or justify continued withholding of Plaintiff's Medicare payments.

63. The determination issued after Plaintiff's rebuttal does not meaningfully address Plaintiff's material evidence, identify the evidence accepted or rejected, or provide specific findings explaining why the conditions asserted to support the suspension continued to exist.

64. On information and belief, Defendants did not conduct the substantive review or make the specific findings required following Plaintiff's rebuttal. Any internal review, findings, consultations, or determinations not disclosed to Plaintiff are uniquely within Defendants' possession and control.

65. Defendants nevertheless continue to withhold Plaintiff's earned Medicare payments pursuant to the suspension.

**F. The Continuing Suspension Causes Immediate Harm**

66. As a direct result of the continuing suspension, Grace is deprived of Medicare reimbursement for covered services already furnished and for otherwise payable services furnished while the suspension remains in effect.

67. The suspension materially impairs Grace's ability to satisfy payroll, maintain required operations, comply with regulatory obligations, retain personnel, and continue uninterrupted hospice services.

68. The injury cannot be measured solely as delayed dollars. If the suspension materially contracts or destroys Grace's operations, later payment cannot recreate the business, restore departed staff and referral relationships, or undo disruption of care to terminally ill beneficiaries.

69. Each day the suspension remains in effect also continues the procedural injury Grace alleges: a significant property deprivation is maintained without the meaningful notice and opportunity to respond that Grace contends the Constitution requires.

70. Grace faces the practical risk that administrative review will arrive only after the suspension has accomplished the very injury judicial review is sought to prevent.

### G. Grace's Claims Remain Collateral to the Underlying Investigation

71. Grace does not ask this Court to determine the ultimate merits of any fraud investigation or the medical necessity of any individual Medicare claim.

72. Grace does not ask the Court to substitute itself for CMS in making hospice-eligibility determinations.

73. Grace asks the Court to decide whether the Government may continue the full deprivation under the procedures actually afforded and whether that continued deprivation falls within the authority Congress lawfully conferred.

74. Those constitutional and statutory questions can be resolved without deciding whether any individual Medicare claim ultimately should be paid.

75. Because the alleged constitutional injury is immediate and the threatened operational injury may become irreversible before ordinary administrative review is complete, Grace lacks an adequate administrative remedy capable of preventing the injury alleged here.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Violation of the Fifth Amendment - Procedural Due Process

76. Grace incorporates Paragraphs 1 through 68 as if fully set forth here.

77. The Fifth Amendment prohibits the federal government from depriving a person of property without due process of law.

78. Grace alleges a constitutionally protected property interest[1] in reimbursement for covered Medicare hospice services lawfully furnished in accordance with the Medicare Act and applicable requirements.

79. Defendants have deprived and continue to deprive Grace of that asserted property interest by maintaining a full payment suspension.

80. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews,* 424 U.S. at 333; *Armstrong*, 380 U.S. at 552.

81. Due process is flexible and does not invariably require a trial-type evidentiary hearing. But the Supreme Court has recognized the baseline requirement of meaningful notice and an opportunity for "some kind of hearing" [2] appropriate to the nature of a significant governmental deprivation. *See Memphis Light*, 436 U.S. at 16-19.

82. Notice must be reasonably calculated to apprise the affected party of the basis for the proposed action and permit a meaningful response. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

---

[1] *See Family Rehab., Inc. v. Azar*, No. 3:17-CV-3008-K, 2020 WL 230615, at *5–6 (N.D. Tex. Jan. 15, 2020) (Kinkeade, J.) (rejecting as "so ludicrous as to be specious" the contention that a provider lacks a property interest in Medicare payments for covered services already rendered). CMS cannot extinguish that protected interest merely by alleging fraud. An unproven allegation cannot serve both as the basis for withholding earned payments and as the reason for denying the fair process necessary to test that allegation.

[2] *See* Henry J. Friendly, *"Some Kind of Hearing,"* 123 U. Pa. L. Rev. 1267, 1267, 1278–82 (1975). Judge Friendly began with the Supreme Court's principle that "some kind of hearing is required at some time before a person is finally deprived of his property interests," *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974), and identified among the fundamental components of a fair administrative process timely notice of the proposed action and the grounds asserted for it, together with a meaningful opportunity to present reasons why the proposed action should not be taken. *Id.* at 1279–81. These principles reinforce the constitutional requirement that an affected party receive an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Where CMS immediately withholds earned Medicare payments based upon an asserted credible allegation of fraud, but provides no meaningful pre-deprivation mechanism through which the provider can test the factual predicate for that extraordinary action, the constitutional concern is not merely the eventual availability of administrative review; it is whether the Government has supplied meaningful process *at the time the deprivation occurs*.

83. Here, the Notice relied primarily on a statistical conclusion while allegedly withholding the methodology, comparator information, individualized beneficiary facts, and claim-specific information necessary to understand and test that conclusion.

84. Grace timely submitted a written rebuttal. But a formal opportunity to file paper objections is not constitutionally meaningful if the affected party lacks the information necessary to answer the asserted basis for the deprivation and the agency continues the deprivation without meaningful engagement with the response.

85. The *Mathews* factors favor additional procedural protection as alleged here. Grace's private interest is substantial because the suspension withholds its principal operating revenue and threatens continuity of hospice operations.

86. The alleged risk of erroneous deprivation is substantial where the fraud predicate rests principally on an undisclosed statistical inference. Disclosure sufficient to test that inference, meaningful consideration of contrary material, and a genuine opportunity to challenge continuation of the full suspension would materially reduce that risk.

87. The Government has a compelling interest in protecting Medicare funds and investigating fraud. That interest, however, does not eliminate the constitutional requirement of appropriate process and can be protected through investigation, ordinary claims review, overpayment remedies, and, if warranted, a narrower targeted or partial suspension.

88. Defendants continued the full suspension without the constitutionally adequate process alleged to be required under the circumstances.

89. Defendants' conduct therefore deprives Grace of property without due process of law in violation of the Fifth Amendment.

## COUNT II

**Violation of the Administrative Procedure Act**

90. Grace incorporates Paragraphs 1 through 82 as if fully set forth here.

91. The APA requires the reviewing court to decide all relevant questions of law and to hold unlawful and set aside agency action that is arbitrary, capricious, contrary to constitutional right, in excess of statutory jurisdiction or authority, or taken without observance of procedure required by law. 5 U.S.C. § 706.

92. Defendants' decision to continue the full payment suspension after Grace's rebuttal constitutes agency action reviewable to the extent alleged in this Complaint.

93. Defendants failed to meaningfully address material objections raised in Grace's rebuttal, including the adequacy of the factual notice, the undisclosed statistical methodology, the asserted reliability of the fraud allegation, and the availability of a partial or targeted alternative.

94. Defendants failed to articulate a reasoned explanation connecting the evidence disclosed to Grace with the continued necessity for a full suspension.

95. Defendants failed to adequately consider material contrary information and less restrictive alternatives.

96. Agency action is arbitrary and capricious when the agency fails to examine relevant data, fails to articulate a satisfactory explanation for its action, or fails to consider important aspects of the problem before it. *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

97. To the extent Defendants rely on an asserted interpretation of the Medicare Act to justify the challenged continuation, *Loper Bright* requires this Court to determine independently whether that action falls within the authority Congress conferred. 603 U.S. at 392-96, 412-13.

98. Statutory ambiguity, standing alone, does not authorize judicial deference to an agency's preferred construction or enlarge the agency's power.

99. Accordingly, the challenged action is arbitrary, capricious, contrary to constitutional right, in excess of statutory authority, and/or without observance of procedure required by law and should be set aside under § 706.

## COUNT III

### Violation of the APA Based on Agency Action Contrary to Governing Law and in Excess of Statutory Authority, and Without Observance of Procedure Required By Law

100. Grace incorporates Paragraphs 1 through 92 as if fully set forth here.

101. Federal agencies possess only the authority Congress has lawfully conferred and must comply with valid statutes and regulations governing the exercise of that authority.

102. The Medicare payment-suspension regulations authorize suspension only within the circumstances and limits prescribed by governing federal law.

103. Neither an agency regulation nor an agency's interpretation of that regulation may enlarge the statutory authority delegated by Congress.

104. *Loper Bright* requires this Court to exercise independent judgment in deciding the best reading of the governing statute and whether the challenged action falls within the authority Congress conferred.

105. Grace alleges that Defendants continued a full payment suspension without establishing the factual and legal predicates required by governing law, without meaningful consideration of Grace's rebuttal, and without adequate justification for continuing a complete rather than targeted deprivation.

106. To the extent Defendants interpret the Medicare Act or implementing regulations to authorize the challenged continuing deprivation on the procedures alleged here, that interpretation does not bind this Court and cannot supply authority Congress did not confer.

107. By acting beyond statutory limits and contrary to mandatory law, Defendants exceeded their lawful authority.

108. Grace is entitled to declaratory and equitable relief setting aside or restraining the challenged action.

## COUNT IV

**Ultra Vires Acts of Federal Officers**

109. Grace incorporates the preceding allegations as though fully set forth herein.

110. Defendants are federal officers who, in their official capacities, possess responsibility for implementing, maintaining, enforcing, or terminating the challenged suspension of Plaintiff's Medicare payments. Plaintiff seeks prospective equitable relief against those officers for the continuing exercise of governmental authority beyond the limits imposed by Congress and the governing Medicare regulations.

111. Congress granted the Secretary limited authority to suspend Medicare payments "pending an investigation of a credible allegation of fraud" against a provider or supplier. 42 U.S.C. § 1395y(o)(1). Congress further directed that the Secretary "shall consult" with the HHS Office of Inspector General in determining whether a credible allegation of fraud exists. Id. § 1395y(o)(2). The existence of the required credible allegation of fraud and the prescribed governmental determination therefore constitute predicates to the fraud-suspension authority exercised against Plaintiff.

112. HHS regulations further define and limit the exercise of that authority. A credible allegation of fraud must possess indicia of reliability. 42 C.F.R. § 405.370. When a suspension is based upon a credible allegation of fraud, CMS, in consultation with OIG and, as appropriate, the Department of Justice, determines whether the suspension should be imposed, directs the Medicare contractor concerning notice, and remains the real party in interest responsible for the suspension decision. 42 C.F.R. § 405.372(a)(4).

113. The suspension notice provided to Plaintiff does not disclose the CMS official who made the predicate determination that a credible allegation of fraud existed, the particular facts establishing the requisite indicia of reliability, the substance of the required consultation with OIG, or the CMS decisionmaker responsible for determining that the circumstances warranted imposition of the suspension.

114. On information and belief, the predicate governmental determinations required for the exercise of fraud-suspension authority were not made as required by 42 U.S.C. § 1395y(o) and 42 C.F.R. §§ 405.370–405.372. Rather, the suspension originated from contractor-generated statistical, clinical, documentation, or payment-review conclusions that were characterized as fraud and thereafter adopted, accepted, or implemented by CMS. The identity of the responsible CMS decisionmaker, the evidence actually considered, the timing and substance of any credible-allegation determination, the substance of any consultation with OIG, and the internal records reflecting those determinations are matters uniquely within Defendants' possession and control.

115. On information and belief, CMS did not itself make the determination assigned to it by 42 C.F.R. § 405.372(a)(4) that the asserted allegation warranted suspension of Plaintiff's Medicare payments. To the extent the suspension instead rests upon a contractor's conclusion or recommendation, such a contractor determination cannot substitute for the decision for which the regulation expressly makes CMS responsible. Whether a qualifying CMS determination exists, who made it, when it was made, and upon what factual basis are matters uniquely within Defendants' possession and control.

116. Grace timely submitted a substantive rebuttal addressing the grounds asserted for suspension and presenting pertinent evidence bearing directly upon whether the suspension was warranted and whether it could lawfully continue.

117. Under 42 C.F.R. § 405.375(a), CMS or its contractor was required, within 15 days after receipt of Plaintiff's rebuttal, to consider Plaintiff's statement, the pertinent evidence submitted with it, and other material bearing upon the matter and to determine whether the facts justified continuation or termination of the suspension.

118. Section 405.375(b)(2) further required the resulting determination to contain specific findings concerning the conditions upon which the suspension was initiated, continued, or removed, together with an explanatory statement concerning the determination.

119. The determination provided to Plaintiff does not meaningfully address the material evidence submitted in rebuttal, identify the evidence accepted or rejected, explain why the rebuttal failed to overcome the asserted basis for suspension, or set forth specific findings demonstrating that the conditions necessary for continued suspension remained satisfied.

120. On information and belief, Defendants did not perform the substantive review or make the specific findings required by 42 C.F.R. § 405.375. To the extent Defendants contend that some additional or undisclosed review or findings occurred, the records reflecting that process are uniquely within Defendants' possession and control.

121. Grace does not merely contend that Defendants incorrectly weighed evidence, abused discretion committed to them, or reached an erroneous conclusion within an otherwise lawful exercise of delegated authority. Plaintiff alleges that Defendants exercised, and continue to exercise, the extraordinary power to suspend Plaintiff's Medicare payments without satisfaction of the predicates and mandatory conditions upon which that authority depends.

122. Specifically, on information and belief, the required predicate determination of a credible allegation of fraud was not made through the governmental process prescribed by

Congress and HHS's regulations; the decision assigned to CMS was not made as required; and the mandatory review and findings governing continuation of the suspension were not performed as required**.** In the absence of those predicates and determinations, Defendants lack lawful authority to continue exercising the fraud-suspension power against Plaintiff.

123. Grace does not seek through this Count a judicial determination concerning whether particular Medicare claims ultimately satisfy coverage, medical-necessity, documentation, or payment requirements. Nor does Plaintiff ask the Court merely to substitute its judgment for that of CMS concerning matters lawfully committed to agency discretion. Plaintiff challenges whether Defendants have lawful authority to continue the suspension when the required conditions for exercising that authority have not been met.

124. The suspension determination challenged here is not itself subject to the ordinary Medicare administrative appeals process. The governing regulation expressly provides that a determination concerning continuation of a suspension "is not an initial determination and is not appealable." 42 C.F.R. § 405.375(c).

125. Any later administrative review concerning an overpayment, claim denial, or other Medicare payment determination does not provide review of the distinct governmental action challenged here and cannot provide timely relief from the ongoing suspension. Plaintiff seeks prospective relief from the present exercise of suspension authority, not adjudication of the ultimate merits of individual Medicare claims.

126. Defendants nevertheless continue to enforce the challenged suspension and withhold Plaintiff's earned Medicare payments. Each continued withholding perpetuates the exercise of governmental power that, on the facts alleged, exceeds the limits of the authority delegated to Defendants.

127. These allegations therefore present more than a claim that Defendants violated governing law while acting within delegated authority. Plaintiff alleges that the responsible federal officers are continuing to exercise governmental power outside the conditions upon which that power was conferred**,** thereby acting ultra vires.

128. Plaintiff seeks no retrospective monetary recovery from the individual Defendants under this Count. Plaintiff seeks prospective declaratory and injunctive relief against the responsible federal officers requiring them to cease enforcing the challenged suspension unless and until the statutory and regulatory predicates governing the exercise of suspension authority have been lawfully satisfied.

129. Grace therefore requests a declaration that Defendants may not continue exercising fraud-suspension authority against Plaintiff absent compliance with 42 U.S.C. § 1395y(o) and the mandatory requirements of 42 C.F.R. §§ 405.370–405.375, together with an injunction prohibiting continued enforcement of the suspension to the extent Defendants are acting beyond the authority lawfully delegated to them.

## COUNT V

**Declaratory and Injunctive Relief**

130. Grace incorporates Paragraphs 1 through 101 as if fully set forth here.

131. An actual and substantial controversy exists concerning the legality and constitutionality of Defendants' continuing full Medicare payment suspension.

132. Grace is suffering immediate and continuing injury from the challenged action.

133. Absent judicial relief, Defendants will continue the deprivation under procedures Grace alleges violate the Fifth Amendment, the APA, and governing Medicare law.

134. Grace has no adequate remedy at law capable of preventing the threatened operational and constitutional injury.

135. Grace therefore seeks declaratory relief under 28 U.S.C. §§ 2201-2202 and temporary, preliminary, permanent, and other appropriate equitable relief.

## VII. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### A. Rule 65 Standard

136. Grace requests immediate interim relief under Federal Rule of Civil Procedure 65. The requested relief is directed to the continuing full suspension and is designed to preserve Grace's ability to operate while the Court adjudicates the legality of the challenged process.

137. A preliminary injunction requires a showing of: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any harm that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *TitleMax of Texas, Inc. v. City of Dallas*, 142 F.4th 322, 327-29 (5th Cir. 2025); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

138. A temporary restraining order is governed by the same substantive equitable considerations, together with the procedural requirements of Rule 65(b). Grace requests prompt temporary relief on notice and an expedited preliminary-injunction hearing. To the extent any relief is requested without notice, Grace will supply the declaration and attorney certification required by Rule 65(b)(1).

### B. Grace Has a Substantial Likelihood of Success

139. Grace's merits showing concerns the claims actually presented in this case: the constitutional adequacy of the process used to continue the suspension and the lawful scope of

Defendants' authority. Grace need not establish at this stage that every underlying claim is payable or that the Government ultimately cannot prove fraud.

140. *Family Rehabilitation* is closely instructive concerning the collateral character of such claims. There, the Fifth Circuit distinguished a provider's procedural-due-process and ultra vires challenge seeking temporary relief pending adequate process from a demand for immediate adjudication of Medicare reimbursement entitlement. 886 F.3d at 503-05.

141. Grace likewise seeks judicial protection from a continuing allegedly unlawful process while leaving the ultimate merits of individual Medicare claims and any fraud investigation to the proper administrative mechanisms.

142. On due process, the governing question is whether Grace received notice and an opportunity to be heard appropriate to the private interest, risk of error, value of additional safeguards, and Government interest. *Mathews*, 424 U.S. at 335.

143. The private interest is substantial. The challenged action withholds Grace's principal stream of operating revenue and threatens the continued functioning of a Medicare hospice provider.

144. The alleged risk of error is substantial because the asserted fraud predicate rests principally on a statistical inference while the underlying methodology and individualized information allegedly were withheld. A provider cannot meaningfully test an inference it has not been given the information necessary to evaluate.

145. Additional safeguards have obvious potential value: disclosure sufficient to understand and test the statistical premise; meaningful consideration of the provider's response; a reasoned explanation for continuation; and an opportunity to challenge why a full rather than targeted suspension remains necessary.

146. The Government's interest in protecting the Trust Fund is weighty but can be preserved without eliminating meaningful process. CMS may continue investigating, reviewing

claims, seeking records, pursuing lawful overpayments, and using appropriately tailored interim protections.

147. *Armstrong* requires an opportunity to be heard at a meaningful time and in a meaningful manner. 380 U.S. at 552. *Mullane* requires notice sufficient to permit an informed response. 339 U.S. at 314. *Memphis Light* illustrates that where government action threatens an important property interest, due process requires a genuine opportunity to present the dispute to a responsible decision-maker before the deprivation becomes effectively final. 436 U.S. at 16-19.

148. Grace therefore has a substantial likelihood of establishing that the rebuttal procedure, as applied here, was not constitutionally meaningful before Defendants continued the complete deprivation.

149. Grace also has a substantial likelihood of success on its APA and statutory-authority claims. Section 706 directs the Court to decide relevant questions of law, and *Loper Bright* requires independent judicial judgment concerning the limits of delegated authority. 603 U.S. at 392-96.

150. The Court therefore should not ask merely whether CMS has proposed a reasonable interpretation of ambiguous language. It must determine whether the best reading of the governing law actually authorizes the continuing full suspension under the circumstances and procedures alleged.

151. Grace further alleges a failure of reasoned decision-making: Defendants did not meaningfully confront the undisclosed methodology problem, material rebuttal arguments, or the availability of less restrictive measures. Those allegations present a substantial APA merits showing under *State Farm*, 463 U.S. at 43.

### C. Grace Faces a Substantial Threat of Irreparable Injury

152. The injury threatened here is not adequately characterized as a temporary delay in money. Grace alleges that Medicare reimbursement is its principal source of operating revenue and that continuation of the full suspension threatens payroll, staffing, compliance, referral relationships, and the ability to furnish uninterrupted hospice care.

153. If the suspension forces Grace to materially contract or cease operations before judicial review occurs, later payment cannot restore the enterprise that was lost, reassemble staff, recreate patient and referral relationships, or undo disruption in end-of-life care.

154. *Family Rehabilitation* is particularly instructive on this practical injury. The Fifth Circuit treated the combined threat that a Medicare provider would go out of business and that Medicare patients would experience disruption as irreparable injury relevant to whether delayed review would be meaningful. 886 F.3d at 504-05.

155. The constitutional injury is also time-sensitive. If meaningful process is constitutionally due before continuation of the deprivation, an eventual administrative ruling after the provider is disabled cannot retroactively supply process at the time it was required. *See Armstrong*, 380 U.S. at 552.

156. The threatened harm is therefore immediate, substantial, and not adequately remediable through a later monetary award.

### D. The Balance of Equities Favors Narrow Interim Relief

157. The requested order would not bar a fraud investigation, prohibit claim review, prevent document requests, foreclose recoupment of an established overpayment, or immunize Grace from lawful enforcement.

158. Instead, the requested order would restrain continuation of the challenged full payment suspension while requiring constitutionally adequate process and judicial review of the legal authority for that action.

159. The Government can protect the Trust Fund during the interim through ordinary claims processing, targeted review, and, if the Court finds a demonstrated need, a narrower partial or claim-specific suspension.

160. By contrast, Grace faces loss of operating capacity and disruption of hospice services if the full suspension continues unchecked.

161. The asymmetry matters. Temporary restraint of one enforcement mechanism can be reversed if Defendants prevail; destruction or severe contraction of a hospice provider before meaningful review cannot be readily reversed.

162. The balance of equities therefore favors interim relief, particularly if tailored to restore prospective reimbursement while preserving lawful claim review and targeted program-integrity protections.

**E. Interim Relief Serves the Public Interest**

163. The public has a strong interest in protecting Medicare funds from fraud. Grace's requested relief does not dispute that interest.

164. The public also has a strong interest in constitutional government, faithful adherence to congressional limits, reasoned agency decision-making, meaningful judicial review, and continuity of hospice services for Medicare beneficiaries.

165. Those interests are complementary rather than mutually exclusive. The Government may continue to investigate and protect public funds while affording constitutionally meaningful process and remaining within the authority Congress conferred.

166. A narrowly tailored injunction preserving Grace's ability to operate while permitting continued lawful investigation better serves the combined public interests than allowing the challenged suspension itself to make judicial review practically meaningless.

**F. The Requested TRO and Preliminary Injunction Are Narrowly Tailored**

167. Grace requests a temporary restraining order, pending an expedited preliminary-injunction hearing, restraining Defendants and persons acting in concert with them from continuing the challenged full Medicare payment suspension against Grace.

168. Grace requests that Defendants be directed during the temporary period to process and pay otherwise payable prospective Medicare claims in the ordinary course, subject to lawful claim review and any narrower protection the Court finds necessary.

169. Following notice and hearing, Grace requests a preliminary injunction continuing that protection until Defendants provide constitutionally adequate notice and a meaningful opportunity to challenge the factual and legal basis for continuation of the suspension, or until further order of the Court.

170. Alternatively, if the Court concludes some interim suspension is necessary to protect the Trust Fund, Grace requests the least restrictive relief reasonably sufficient to protect both interests, including a partial, targeted, beneficiary-specific, or claim-specific suspension rather than complete withholding of Medicare reimbursement.

171. Grace also requests that Defendants be restrained from taking additional adverse action against the provider solely because it invoked judicial review. This request does not prohibit independent lawful enforcement based on grounds separate from the filing of this action.

172. Grace requests an expedited hearing and leave to present declarations, financial evidence, the suspension notice, the rebuttal, the continuation decision, and other evidence relevant to Rule 65.

173. Under Rule 65(c), the Court determines appropriate security. Because the requested injunction principally restrains allegedly unlawful governmental action and Defendants retain ordinary program-integrity remedies, Grace requests that the Court require no security or only nominal security as the Court deems proper. Fifth Circuit law recognizes district-court discretion concerning security. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978).

174. The requested relief preserves meaningful judicial review and the parties' respective interests without adjudicating the ultimate merits of any individual Medicare claim.

## VIII. CONDITIONS PRECEDENT

175. All conditions precedent to the filing of this action have been satisfied, waived, or are excused to the extent applicable. To the extent any administrative remedies remain, Grace alleges they are inadequate to prevent the immediate and continuing constitutional and operational injury asserted here because these claims challenge the legality of the process and authority used to continue the suspension and are collateral to the ultimate merits of individual claims.

## IX. ATTORNEY'S FEES AND COSTS

176. Grace seeks attorney's fees, litigation expenses, and taxable costs to the extent recoverable under applicable federal law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, if Grace becomes entitled to such relief.

## X. JURY DEMAND

177. Because this action seeks declaratory, injunctive, and other equitable relief against federal agencies and officers acting in their official capacities, Grace does not demand a jury trial.

## PRAYER FOR RELIEF

178. **WHEREFORE, PREMISES CONSIDERED,** Plaintiff Grace Hospice and Palliative Care, Inc. respectfully requests that the Court enter judgment in its favor and grant the following relief:

A. Assume jurisdiction over this action.

B. Declare under 28 U.S.C. §§ 2201-2202 that Defendants' continuing full Medicare payment suspension, under the procedures alleged here, violates the Due Process Clause of the Fifth Amendment.

C. Declare that the challenged agency action violates the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

D. Declare that Defendants acted arbitrarily, capriciously, contrary to constitutional right, in excess of statutory authority, and/or without observance of procedure required by law.

E. Hold unlawful and set aside the challenged agency action under 5 U.S.C. § 706 to the extent warranted by the Court's findings.

F. Issue a Temporary Restraining Order restraining continuation of the challenged full payment suspension pending an expedited preliminary-injunction hearing and directing processing of otherwise payable prospective Medicare claims subject to ordinary lawful review and any narrower interim protection ordered by the Court.

G. After notice and hearing, issue a Preliminary Injunction continuing appropriate interim protection until Defendants provide constitutionally adequate notice and a meaningful opportunity to challenge continuation of the suspension, or until further order of the Court.

H. Alternatively, if the Court concludes some interim suspension is warranted, limit that suspension to the least restrictive partial, targeted, beneficiary-specific, or claim-specific measure reasonably necessary to protect the Medicare Trust Fund.

I. Issue permanent declaratory and injunctive relief consistent with the Court's final adjudication.

J. Remand any matter requiring further agency proceedings to HHS and CMS with instructions consistent with the Court's judgment.

K. Retain jurisdiction as necessary to enforce the Court's equitable relief.

L. Award Grace its taxable costs and any attorney's fees, litigation expenses, or costs recoverable under applicable federal law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, if Grace satisfies the statutory requirements.

M. Set security under Rule 65(c) at zero or a nominal amount, or such other amount as the Court deems proper.

N. Grant Grace such other legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

**KENNEDY**
**Attorneys & Counselors at Law**

*/s/* Mark S. Kennedy____________
**Mark S. Kennedy**
State Bar of Texas No. 24000122
markskennedylaw@msn.com
**C. Trey Scott**
State Bar of Texas No. 24083821
trey@kennedylaw.com
**Lurese A. Terrell**
State Bar of Texas No. 24008139

lurese@kennedylaw.com
12222 Merit Drive, Suite 1750
Dallas, Texas 75251
Telephone: (214) 445-0740
Facsimile: (972) 661-9320

**ATTORNEYS FOR PLAINTIFF**

# VERIFICATION

I, Ingrid Leavitt, declare as follows:

1. I am the Owner of Plaintiff Grace Race Palliative Hospice, l.l.C., and I am authorized to make this Verification on its behalf.
2. I have reviewed the foregoing Complaint. The factual allegations concerning Plaintiff, its operations, its participation in the Medicare program, the furnishing and billing of Medicare-covered services, the suspension of Plaintiff's Medicare payments, notices and communications received by Plaintiff, administrative submissions made by Plaintiff, Medicare payments withheld from Plaintiff, and the operational and financial effects of the suspension are true and correct based upon my personal knowledge and my review of Plaintiff's regularly maintained business records.
3. To the extent the Complaint contains allegations expressly made on information and belief concerning matters within the knowledge or control of Defendants or their contractors, I understand those allegations to be based upon the information presently available to Plaintiff and the reasonable inferences drawn from that information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 8|24, 2026, at Houston, TX.

INGRID LEAVITT
OWNER
GRACE RACE PALLIATIVE HOSPICE, L.L.C.

]